James CREED *v.* STATE of Arkansas

CR 07–556                                    273 S.W.3d 494

Supreme Court of Arkansas
Opinion delivered January 31, 2008

[Rehearing denied March 6, 2008.]

*Hurst, Morrissey & Hurst, PLLC,* by: *Q. Byrum Hurst* and *Justin Hurst,* for appellant.

*Dustin McDaniel,* Att'y Gen., by: *David R. Raupp,* Sr. Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. On November 1, 2002, Malvern police officers responded to a report of a rape. The victim told the police that she heard her doorbell ring and when she opened the door slightly, an intruder rushed through. She stated that the intruder held a knife with a long blade in one hand and a rag with a strong chemical odor, which he tried to place over her face. The intruder placed the knife to the victim's throat, forced her onto the floor of the laundry room, and ordered her to disrobe. After she removed her shirt, the intruder forced her to perform oral sex in the presence of her children, who stood next to her crying. The victim provided police with a detailed description of the intruder's physical appearance and clothing, but stated that she did not recognize him. A semen sample was collected from the crime scene found on the laundry room floor.

Although the DNA profile prepared by the Arkansas State Crime Lab did not provide a match for a suspect at that time, in October 2004, the Crime Lab notified the Malvern Police Department that a DNA search had produced a positive match to an inmate named James Ray Creed at the Deerfield Correction

Facility in Ionia, Michigan. Following his transport to Arkansas, a trial was held, and a jury convicted Creed of rape and sentenced him to life in prison.

For his first point on appeal, Creed argues the trial court erred by denying his motions for a continuance and for the appointment of additional experts. We review a denial of a motion for continuance under an abuse-of-discretion standard, *see, e.g., Smith v. State*, 352 Ark. 92, 98 S.W.3d 433 (2003), and an appellant must demonstrate that the trial court's abuse of its discretion resulted in prejudice amounting to a denial of justice. *See Cherry v. State*, 347 Ark. 606, 66 S.W.3d 605 (2002). Ark. R. Crim. P. 27.3 (2004) provides that a court shall grant a continuance "only upon a showing of good cause and only for so long as necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case." Other factors a trial court should take into consideration include: (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the attendance of the witness in the event of a postponement; and (4) the filing of an affidavit, stating not only what facts the witness would prove but also that the appellant believes them to be true. *Stenhouse v. State*, 362 Ark. 480, 488-89, 209 S.W.3d 352, 358 (2005).

The trial court issued an order granting Creed's motion for a psychiatric evaluation on August 30, 2006, and clinical psychologist Ron Faupel performed the evaluation on September 20, 2006 — the same day the trial court granted Creed's motion for substitution of counsel. On November 1, 2006, Creed filed a motion requesting the appointment of psychiatric and DNA experts, and he filed another motion for a continuance on November 17, 2006, stating that he had "not had sufficient time to review the scientific material as well as the facts against him." Creed informed the court that he had been in contact with a psychiatric expert in Little Rock, but the expert could not conduct an independent mental evaluation before the trial date of December 1, 2006. The trial court issued orders denying Creed's motion on November 22, 2006, following pretrial hearings. On November 30, 2006, the day before trial, Creed filed a renewed motion for a continuance, which the court denied.

In *Ake v. Oklahoma*, 470 U.S. 68 (1985), the Supreme Court held that where an indigent defendant makes a preliminary showing that his sanity at the time of the offense is likely to be a

significant factor at trial, the State must provide access to a psychiatrist's assistance on the issue if the defendant cannot afford one. Ark. Code Ann. § 5-2-305 (Repl. 2006) provides the statutory procedures to be followed when the defense of mental disease or defect is raised, and in *Dirickson v. State*, 329 Ark. 572, 576-77, 953 S.W.2d 55, 57 (1997), we addressed *Ake* and § 5-2-305, stating the following:

> We have repeatedly held that a defendant's right to examination under *Ake* is protected by an examination by the state hospital as provided by this statute. An evaluation performed under this section does not normally require a second opinion, and further evaluation is discretionary with the trial court. Stated simply, the State is not required to pay for a defendant to shop from doctor to doctor until he finds one who will declare him incompetent to proceed with his trial. In the present case, appellant was examined at the state hospital, and, thus, the requirements under *Ake* were satisfied.

At the pretrial hearing on November 20, 2006, the State objected to Creed's motions for continuances and argued that Creed should have selected another expert when he knew the one he had selected was unavailable before the trial date. The trial court addressed the issue of an appointment of an additional expert for a mental evaluation and a continuance, and said:

> [T]he forensic examination is very thorough, well recognized tests have been performed, Dr. Faupel sets out clearly not only his tests, but his findings. If at all, [Creed] falls in the range of mild retardation, it's not a defense. The statements from the Prosecutor based on exigency of this matter, convinced the Court that the motion should be denied. Dr. Diner can make himself available. If we need to transport [Creed] to Dr. Diner, we'll do that today, or tomorrow, or whatever is necessary, if you'll get me a transport order. That's the Court's order.

At another pretrial hearing held on November 22, 2006, the Court again denied Creed's motions for continuances, stating the following:

> [T]he defendant has had ample time throughout this period from the time of his arrest and he's had counsel since August beginning with Ms. Lemons and then passed off to you, your firm, sometime between August and September, I believe . . . I told [Creed's attorney of record] that if he wishes transport of the defendant, if

he'll give me the transport order and if I can't be located, Judge Williams, either one of us can sign it and we will help you get him there, provided — assuming that the doctor couldn't come down here and couldn't get off, couldn't get there, but we'll work him in, we will get him in there for that session.

■ We find no abuse of discretion. The trial court denied Creed's motion for the appointment of an additional mental expert to conduct an independent evaluation because the court-ordered evaluation was thorough and conformed with all the requirements of § 5-2-305(d). Further, the court repeatedly emphasized that it was willing to transport Creed to an expert of his choice for an additional evaluation before trial.

Turning to the issue of Creed's motion for appointment of a DNA expert and continuances to secure a DNA expert, we closely examine such denials that deprive a defendant the chance to have an independent review of a DNA analysis. *Swanson v. State*, 308 Ark. 28, 823 S.W.2d 812 (1992). However, while the court carefully examines a denial of a continuance to procure a DNA expert, this court will not reverse the denial when the accused did not provide an expert's name to the circuit court. *See Hill v. State*, 321 Ark. 354, 902 S.W.2d 229 (1995). In *Munoz v. State*, 340 Ark. 218, 9 S.W.3d 497 (2000), we held that a trial court did not abuse its discretion when it denied a motion for continuance where the State's DNA results were available for almost four months before the trial date, and Munoz had waited until almost a week before trial to request a DNA expert. Although Munoz had months to locate an expert witness and arrange for an independent review of the evidence, he could not support his motion for a continuance with the name of a potential expert, nor could he offer any prospects of securing such a witness in the near future.[1]

Creed's own argument admits that the State made it clear that DNA evidence would be an issue at trial when the State requested that the court order Creed to submit DNA samples in a hearing held on August 23, 2006. Although Creed's substitution of

---

[1] Opposing Creed's motion for appointment of a DNA expert at State expense, the State argued that Creed was not indigent. Creed told the trial judge that he had recently been granted an inheritance, although he was uncertain of the amount and time of distribution of the estate. At a pretrial hearing Creed's counsel asked for the State to pay for a DNA expert for Creed and suggested that Creed could reimburse the State after his inheritance was settled. Creed's retained counsel could have as easily made a similar arrangement.

counsel took place on September 20, 2006, he argues that the trial court erred in not granting a continuance to "develop the evidence" and hire a rebuttal expert. Similar to the situation in *Munoz, supra,* the trial court denied Creed's motion for a continuance here after he had over three months to secure a DNA expert. *See also Swanson, supra; Hill, supra.*

■ Finally, Creed argues that the trial court erred in denying his motions for continuances because he needed more time to locate alibi witnesses. But Creed's counsel made it clear at the pretrial hearing on November 20 that there was little likelihood of procuring an alibi witness. Accordingly, the trial court did not abuse its discretion in denying Creed's motions for appointment of experts and for continuances.

For his second point, Creed argues that the trial court erred by allowing evidence of prior bad acts, such as: (1) testimony by Malvern police officer Chad Almond; (2) a letter the State offered as an exhibit showing Creed's last known address as the "Deerfield Correctional Facility"; (3) a document containing Creed's statement admitting an attempted sexual assault with intent of forcible oral penetration; and (4) documents showing Creed guilty of an assault in 2001.

Any reference to a defendant's prior convictions during the guilt phase of a criminal trial invariably results in some prejudice; however, "the trial court is granted a wide latitude of discretion in granting or denying a motion for a mistrial, and we will not reverse the decision of the trial court except for an abuse of that discretion or manifest prejudice to the complaining party." *Hamilton v. State,* 348 Ark. 532, 541-42, 74 S.W.3d 615, 620 (2002).

During direct examination, Officer Almond stated that a letter from the Arkansas State Crime Lab indicated it found a DNA match with Creed; the letter listed Creed's last known whereabouts as a correctional facility in Michigan. The trial judge denied the motion for a mistrial at that point as premature because he had already determined that evidence of the particular crime for which Creed was incarcerated in Michigan would be allowed at trial under Ark. R. Evid. 404(b).

Rule 404(b) allows evidence of other crimes, wrongs, or acts to be admitted for the purpose of showing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence is not admissible under Rule 404(b) if it is offered to show a defendant's bad character traits and

to show that he acted in conformity with those traits in committing crimes presently charged. The evidence must be independently relevant, which means that it has the tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence. *Williams v. State*, 343 Ark. 591, 36 S.W.3d 468 (2001). Any circumstance that links a defendant to the crime or raises a possible motive for the crime is independently relevant and admissible under Rule 404(b). *Jackson v. State*, 359 Ark. 297, 197 S.W.3d 468 (2004). Like other evidentiary determinations, balancing of the probative value of evidence against prejudicial effect is a matter left to the trial judge's sound discretion. *Id.*

Other recent cases before this court involving similar circumstances and Rule 404(b) issues are instructive here. In *Morris v. State*, 367 Ark. 406, 240 S.W.3d 593 (2006), we held that the testimony of a witness about her rape by the defendant was sufficiently similar to another victim's allegations of rape to be admissible as proof of motive, intent, preparation, plan, and scheme pursuant to Rule 404(b). In *Fells v. State*, 362 Ark. 77, 207 S.W.3d 498 (2005), the court ruled that testimony by a previous rape victim showing similar circumstances surrounding both rapes was admissible under Rule 404(b) because it showed the defendant's motive, intent, and plan to rape the victim there. *See also Davis v. State*, 362 Ark. 34, 207 S.W.3d 474 (2005) (evidence that youth minister made sexual advances toward a church member was admissible to show that his forced sexual interaction with another church member was not consensual); *Burmingham v. State,* 342 Ark. 95, 27 S.W.3d 351 (2000) (evidence of similarities in way rape of first victim was perpetrated was admissible to show similar scheme and intent when rape of second victim was committed); *Sasser v. State*, 321 Ark. 438, 902 S.W.2d 773 (1995) (testimony of first victim, a convenience store clerk, regarding defendant's rape and attempted murder of her was admissible to prove defendant's intent to kill a second convenience store clerk several years later).

Here, the trial judge ruled that a redacted version of the Michigan Department of Correction Presentence Investigation was admissible because it contained Creed's statement admitting his attempt to commit a rape similar to the rape he was alleged to have committed in Arkansas. Creed said:

> I was watching her at the lake and I watched her all day and my dick got hard and I thought to talk to her but I wanted a blow job so I

came to her and say suck my cock and I was going to make her put oral sex on me but I ran and her family hold me down till the police go there than [sic] I went to jail.

■ Based on our prior rulings finding evidence showing similarities between rapes as admissible under Rule 404(b) to show similar scheme and intent, motive, preparation, and plan, the trial court here did not abuse its discretion in allowing the admission of Creed's Michigan presentence report showing similarities to the present rape in Arkansas. Further, because this evidence was admissible under Rule 404(b), the trial court did not err in denying Creed's motion for a mistrial when Officer Almond stated that the letter from the Arkansas State Crime Lab reflected Creed's residence was at the Deerfield Correctional Facility.

■ Creed also argues that the trial court erred by allowing into evidence an order from the Juvenile Division of the Hot Spring Circuit Court, indicating that Creed pled guilty to a charge of attempted kidnapping, reduced to assault in 2001. However, the order was admitted into evidence without Creed's objection, and his failure to make a contemporaneous objection prevents him from asserting any error on the part of the trial court. *See McClain v. State,* 361 Ark. 133, 205 S.W.3d 123 (2005).

■ Finally, Creed asserts that even if the redacted Michigan presentence report was relevant, the trial court erred in admitting it over his objection because it was unfairly prejudicial under Ark. R. Evid. 403. When reviewing a circuit court's ruling under Rule 403, this court applies an abuse-of-discretion standard. *Flanery v. State,* 362 Ark. 311, 208 S.W.3d 187 (2005). Reviewing a trial court's ruling under Rule 403, we have noted that "it is likely that evidence offered by the state will be prejudicial to the accused, or it probably would not be offered"; however, the evidence should not be excluded unless the accused can show that the evidence lacks probative value in view of the risk of unfair prejudice to the defendant. *Beed v. State,* 271 Ark. 526, 542, 609 S.W.2d 898, 909 (1980). Although admission of the Michigan presentence report was prejudicial to Creed, the similarities between the rape there and the rape at issue here were sufficient to make this evidence probative on the issue of Creed's motive, intent, preparation, plan, and scheme. Based on the broad discretion of the trial court in weighing the probative value of the

evidence against its prejudicial effect, the trial court did not abuse its discretion when it allowed this evidence under Rule 403. Accordingly, we find no error.

In accordance with Rule 4-3(h) of the Arkansas Supreme Court Rules, the record has been reviewed for all objections, motions, and requests made by either party, which were decided adversely to Creed, and no prejudicial error has been found.

Affirmed.