Cite as 2025 Ark. App. 365

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR–24–719

|  |  |  |
|---|---|---|
|  |  | **Opinion Delivered** June 4, 2025 |
| JOE MORRIS | | APPEAL FROM THE POPE |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [NO. 58CR-20-61] |
| V. | | |
| | | HONORABLE JAMES DUNHAM, |
| STATE OF ARKANSAS | | JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## BRANDON J. HARRISON, Judge

The Pope County Circuit Court revoked Joe Morris's suspended imposition of sentence (SIS) and sentenced him to fifteen years' imprisonment and ten years' SIS. On appeal, he asserts that the circuit court abused its discretion by denying his request for a continuance in order to retain new counsel. We affirm.

In January 2020, the State charged Morris with possession with the purpose to deliver methamphetamine. He was also charged as a habitual offender. In April 2021, Morris pled guilty and received a sentence of five years' imprisonment and three years' SIS. In December 2023, the State petitioned to revoke Morris's SIS, alleging that on 7 November 2023, he had committed the offenses of possession of methamphetamine, cocaine, or heroin with purpose to deliver; possession of a Schedule VI controlled substance with purpose to deliver; and fleeing.

The circuit court convened a revocation hearing on 28 June 2024. Morris's appointed defense counsel, Cody Bassham, informed the court that Morris had asked the day before whether he could have a continuance to hire new counsel. Bassham had advised Morris that because his arrest had happened over eight months ago, it was unlikely that the court would grant a continuance. Morris told the court that he had hired private counsel in a previous case and that he was trying to do so again. Morris said,

> My son spoke to an attorney this morning and, you know, we have a little bit of time left, you know, and then, you know.
>
> But I haven't really went over too much with Cody. It's just been a few minutes. They give me a lawyer, Mr. Seth—Mr. Seth Bradley, and I never did even speak with him, so and then they kept telling me when I kept calling the public defender's office that they was waiting to give me an attorney, and then all of a sudden he came on there.
>
> I didn't even know this here was being conducted—go on until I seen it on the—I had people looked on Court Connect to find out. So I haven't been served with anything on this. I had looked up a couple things, you know, where that it, the Canon Act that I ask you to step down, you know, from it because I don't feel like that that— that—I don't know. He said that if I don't take the plea bargain, but I haven't really went over this stuff enough—he just handed me this yesterday, so this was supposed to be discovery yesterday.

Morris asked to "fire" his attorney.

The court explained that a public defender is appointed by the court to represent a defendant; the defendant does not select the public defender. The court stated, "This appears to be very clearly the matter of the defendant wishing that he would not have a hearing today, although one has been set for a significant amount of time."

Morris did not wish to represent himself, so the hearing proceeded, and the court revoked Morris's SIS. Morris received a sentence of fifteen years' imprisonment and ten years' SIS, which he has timely appealed.

2

Morris's sole point on appeal is that the circuit court abused its discretion in denying his motion for a continuance so he could retain new counsel. A defendant's right to counsel of choice is grounded in the Sixth Amendment to the United States Constitution and is also guaranteed by article 2, section 10 of the Arkansas Constitution. While constitutionally guaranteed, the right to counsel of one's choosing is not absolute and may not be used to frustrate the inherent power of the court to command an orderly, efficient, and effective administration of justice. *Bullock v. State*, 353 Ark. 577, 111 S.W.3d 380 (2003). Once competent counsel has been obtained, any request for a change in counsel must be balanced against the public's interest in the prompt dispensation of justice. *Raino v. State*, 2021 Ark. App. 331. Additionally, once a defendant has accepted representation by an attorney, the fact that the defendant is dissatisfied with counsel's efforts does not entitle him to appointment of a different attorney. *Bullock, supra.* In fact, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006).

Factors to be considered by the circuit court in determining whether to grant a continuance for the purpose of obtaining new counsel include whether there was adequate opportunity for the defendant to employ counsel; whether other continuances have been requested and granted; the length of the requested delay; whether the requested delay is for legitimate reasons; whether the motion for a continuance was timely filed; whether the defendant contributed to the circumstances giving rise to the request for a continuance; and whether the reason for the discharge of existing counsel was solely for the purpose of obtaining a continuance. *Brewer v. State*, 2017 Ark. App. 335, 525 S.W.3d 24. In each

3

situation, the circuit court must look at the particular circumstances of the case at bar, and the issue must be decided on a case-by-case basis. *Liggins v. State*, 2015 Ark. App. 321, 463 S.W.3d 331.

A circuit court retains broad discretion to grant or deny a continuance for purposes of obtaining new counsel. *Brewer, supra.* A circuit court's denial of a continuance will not be overturned absent a showing of abuse of that discretion. *Raino, supra.* An abuse of discretion occurs only when the circuit court acts improvidently, thoughtlessly, or without due consideration. *Brewer, supra.* Further, even if the circuit court abused its discretion, an appellant must also demonstrate prejudice amounting to a denial of justice. *Raino, supra.*

Morris asserts that the circuit court "mistook [his] frustration with the public defender's office and stated choice to hire a private attorney—like he did before—to support a finding that he 'just didn't want a hearing today.'" He contends that there is no indication of any trial preparation done in the first four months that his case was pending, that he never met the first public defender appointed to represent him, and that Bassham did not file an entry of appearance in the case until 13 May 2024, which was one month before the hearing.[1] He had also not previously requested a continuance.

Morris also faults the circuit court with not identifying the public interest at stake or noting any scheduling conflicts that would be caused by granting the continuance. The court also failed to inquire about the length of time requested or whether the continuance would inconvenience the State's two witnesses. Morris claims he was left in a "catch-22"

---

[1]Bassham filed his entry of appearance six weeks before the revocation hearing.

in which he could either go forward without counsel or go forward with the public defender, whom he had met just one day before the hearing to review the State's responses to discovery.

In support of his position, Morris cites *Conic v. State*, 2021 Ark. App. 185, 624 S.W.3d 322. In *Conic*, the defendant appeared at his sentencing hearing with attorney Danny Williams, and Williams informed the court that Conic had hired a new attorney, Angela Kendrick. Kendrick did not appear, and Williams asked for a continuance on her behalf, which was denied.

The court discharged Williams from his obligation to represent Conic, and after Conic confirmed that he no longer wanted Williams as his attorney and that he had hired Kendrick as his new attorney, the court relieved Williams and told him that he was free to leave. After an hour-long break, the court stated that Kendrick had contacted the court and indicated that she would not appear at the hearing. The court told Conic that he had "played yourself into no attorney." *Id*. at 6, 624 S.W.3d at 326. Conic asked the court to grant a continuance "based off of the grounds of my ignorance," but the court denied the request, and the sentencing hearing proceeded. *Id*., 624 S.W.3d at 327.

On appeal, this court held that the circuit court had abused its discretion in denying Conic's request for substitution of counsel and for a continuance. We held that the circuit court had not weighed Conic's constitutional right to counsel against a countervailing governmental interest, had not identified any scheduling conflict or explained why the probation sentencing could not sustain a minimal delay, had not inquired about the length of the requested delay, and had not asked Conic whether he had a legitimate reason for

5

retaining a new attorney. Further, the court had not found that Conic was made aware of the danger of self-representation or that he knowingly and intelligently waived his right to counsel. This court held that the circuit court's decision that Conic could represent himself was clearly against the preponderance of the evidence and that the denial of a continuance under these circumstances amounted to the denial of due process of law.

Morris also cites *Clements v. State*¸ 306 Ark. 596, 817 S.W.2d 194 (1991), in which Clements was facing retrial for capital murder. On 23 April 1991, the circuit court appointed attorneys Richard Atkinson and Kenneth Suggs to defend Clements at his second trial scheduled for 24 June 1991. At a pretrial hearing on June 17, Atkinson moved for a continuance, citing the amount of discovery and the time needed to adequately prepare for trial. The court denied the motion and instead found both attorneys negligent, held them in contempt, removed them from the case, and appointed two new attorneys. The court presented Clements with two options: if he accepted representation from the new attorneys, the court would grant a continuance; if he proceeded with Atkinson, as he wanted, then the court would not grant a continuance. Clements agreed to representation by the new attorneys but also filed an interlocutory appeal of Atkinson's dismissal.

The Arkansas Supeme Court described the situation as a "catch–22 position that compelled [Clements] to accept new, unrequested counsel in order to gain a continuance or proceed immediately to trial against the advice of his previously assigned attorney, with whom he had developed a working relationship." *Id*. at 608–09, 817 S.W.2d at 200. The supreme court held that the circuit court's action was "arbitrary and unacceptable" and constituted a violation of Clements's right to counsel. *Id*. at 609, 817 S.W.2d at 200.

6

Morris concludes, leaning on *Conic* and *Clements*, that the circuit court abused its discretion in this case and asks that we reverse and remand for a new revocation hearing.

The State disagrees that Morris was denied the right to counsel of his choosing because when an appellant fails to identify his counsel of choice, he "manifestly" is not deprived of that choice. *See Raino*, 2021 Ark. App. 331, at 9. The State also explains that Morris did not make his motion for continuance until the day of the hearing, seven months after the date of his arrest on 7 November 2023. In the interim, the court held four status hearings in 2024 (February 6, April 15, May 13, and June 17) at which times Morris could have informed the circuit court of his alleged dissatisfaction with appointed counsel and his intention to retain private counsel. Morris's only reason for requesting the continuance was his dissatisfaction with the amount of communication between him and Bassham. But Bassham told the court that there were records of his Zoom calls with Morris, during which they had reviewed evidence. Bassham also stated that he was ready for the hearing when asked. The State concludes that the totality of the circumstances supports the court's rationale that Morris was moving for a continuance primarily for delay purposes.

We hold that the circuit court did not abuse its discretion in denying Morris's continuance motion. Morris had no other counsel identified, and by waiting until the day of the hearing to raise the issue, he failed to show diligence. The cases cited by Morris are distinguishable; in *Conic*, the defendant was forced to proceed with no counsel, and in *Clements*, the defendant was coerced into accepting new representation so that his attorneys could be adequately prepared for trial. Here, Morris was not left without representation, nor did he face the situation of proceeding with an admittedly unprepared attorney. Morris

7

did not allege any actual deficiency in Bassham's representation, and Bassham was present at the hearing and ready to proceed. Finally, Morris has not demonstrated prejudice resulting from Bassham's representation. Morris's underlying conviction was a Class C felony, so as a habitual offender, he faced a sentence of not less than three years and not more than thirty years. Ark. Code Ann. § 5-4-501(b)(2)(D) (Repl. 2024). As we have said, the court sentenced Morris to fifteen years' imprisonment and ten years' SIS. A defendant who is sentenced within the statutory range—and short of the maximum sentence—cannot establish prejudice. *Tate v. State*, 367 Ark. 576, 242 S.W.3d 254 (2006).

Affirmed.

WOOD and BROWN, JJ., agree.

*Dusti Standridge*, for appellant.

*Tim Griffin*, Att'y Gen., by: *James Hill*, Ass't Att'y Gen., for appellee.